598 A.2d 647

**ANCHOR DARLING VALVE COMPANY, Petitioner,**

**v.**

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Aug. 2, 1991.

Decided Oct. 22, 1991.

172

Michael H. Collins and Patricia L. Bowman, for petitioner.

James K. Bradley, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Anchor Darling Valve Company (Employer) appeals a decision of the Unemployment Compensation Board of Re-

view (Board) which affirmed the referee and granted benefits to Robert Bergman (Bergman). We reverse.

Bergman worked for Employer as a manager of marine sales and was also manager for commercial control products and acting product manager of small valves. United States Navy cutbacks resulted in a decreased demand for marine sales parts and a concurrent one-third reduction in Bergman's responsibilities as marine sales manager. This position was subsequently eliminated. Employer then offered Bergman, who was a 26 year employee, a position as an expedited spare parts administrator at the same salary and benefits as his previous position. Bergman refused to accept the position, even on a trial basis, and voluntarily terminated his employment on June 7, 1990. He did so in the belief that his responsibilities in the proffered position would be diminished.

On June 3, 1990, Bergman applied for unemployment compensation benefits, which were denied by the Office of Employment Security (OES). The decision of the OES was reversed on appeal to the referee. The Board affirmed the referee's decision to grant benefits. Employer requested reconsideration of the Board's decision, which was granted. Following argument, the Board again affirmed the decision of the referee and determined the position offered Bergman was not suitable work in light of his background, training and prior experience.

On appeal to this Court, Employer argues that the Board erred in finding that 1) the position offered Bergman was not suitable work, 2) Bergman established a necessitous and compelling cause for terminating his employment, and 3) Bergman is eligible for benefits in light of his lack of good faith by refusing the position.[1]

---

1. Our scope of review is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or whether necessary findings of fact are supported by substantial evidence. *Uniontown v. Unemployment Compensation Board of Review,* 126 Pa.Commonwealth Ct. 102, 558 A.2d 627 (1989).

■ A claimant who becomes unemployed by a voluntary termination of his position bears the burden of proving that the termination was for cause of a necessitous and compelling nature. *Chamoun v. Unemployment Compensation Board of Review*, 116 Pa.Commonwealth Ct. 499, 542 A.2d 207 (1988).

■ Cause of a necessitous and compelling nature is construed as cause which results from overpowering circumstances which produce both real and substantial pressure to terminate employment and which would compel a reasonable person to act in the same manner. *Uniontown Newspapers, Inc. v. Unemployment Compensation Board of Review*, 126 Pa.Commonwealth Ct. 102, 558 A.2d 627 (1989); *Southeastern Pennsylvania Transportation Authority v. Unemployment Compensation Board of Review*, 109 Pa.Commonwealth Ct. 191, 531 A.2d 60 (1987). Whether an employee had cause of a necessitous and compelling nature is a legal conclusion drawn from review of the underlying findings of fact and is subject to appellate review. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977).

■ To determine whether Bergman had a necessitous and compelling cause for terminating employment, we will address Bergman's contention that he would have diminished job responsibilities and review the nature of Bergman's previous position as marine sales manager and the duties of the new position of expedited spare parts administrator.

As manager of marine sales, Bergman was responsible for management of all sales and marketing efforts for government inquiries and contracts which require direct contact with customers and marketing and proposal preparation. In this position, Bergman reported directly to the sales director. Bergman attended management meetings in his capacity as marine sales manager, but would not have done so in the new position. As expedited spare parts administrator, Bergman would determine ways in which to

expedite the production and delivery of spare parts to customers and would report to the engineering manager.

Bergman refused to accept the new position because he felt the position constituted a demotion and would not utilize his education or background. However, a review of the record reveals Bergman holds no degree in any area. His post-high school education consists of an engineer-in-training certificate from Pennsylvania State University and courses in management, marketing and sales. While it is recognized that Bergman would not be attending management meetings as he had in his previous position, the record indicates he would retain some of the duties from his prior position in his new capacity as expedited spare parts administrator, and that he had "an opportunity to build the job and perhpas [sic] build it into something it was not at the current time." R.R. at 17.

This Court has previously established that claimants have the duty to take all necessary and reasonable steps to preserve employment. *Evasovich v. Unemployment Compensation Board of Review*, 80 Pa.Commonwealth Ct. 395, 471 A.2d 921 (1984). *See also Heltzel v. Unemployment Compensation Board of Review*, 75 Pa.Commonwealth Ct. 141, 461 A.2d 1335 (1983) (Claimant must be willing to accept some changes in job assignment and is not permitted to refuse Employer's offer of other suitable work simply because job offered is not best job available.) We have also acknowledged the fact that employers frequently have occasion to alter work assignments and schedules in accordance with changing business conditions and managerial judgment. *Unemployment Compensation Board of Review v. Fields*, 24 Pa.Commonwealth Ct. 347, 355 A.2d 836 (1976).

In *Grossman v. Unemployment Compensation Board of Review*, 52 Pa.Commonwealth Ct. 499, 505, 415 A.2d 1018, 1020 (1980), this Court considered and rejected a claimant's belief that the purpose of the Unemployment Compensation Law (Act)[2] is to protect a worker's special-

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §§ 751–914.

ized skills in the face of economic difficulties. We stated that remaining unemployed would not serve to better maintain the abilities of the claimant and determined the fundamental purpose of the Act is not to preserve workers' skills, but rather to "provide a semblance of economic security to those who are unemployed through no fault of their own." [3] *Id.* citing *Barillaro v. Unemployment Compensation Board of Review,* 36 Pa.Commonwealth Ct. 325, 331, 387 A.2d 1324, 1328 (1978).

In this case, Bergman refused to accept Employer's offer of continued alternative work with similar duties, and the same salary and benefits, at the same location. The proffered position was one that Bergman was clearly capable of performing. We find no real, substantial or reasonable reasons for Bergman's "belief" that the new position offered less responsibility and would not utilize his educational background, especially in light of Bergman's failure to determine either the particular aspects of the position, or what responsibilities would be diminished. Consistent with this Court's determination in *Grossman,* compensation for self-perceived demotions or loss of job prestige is not provided for under the Act.

There being no cause of a necessitous and compelling nature to warrant Bergman's termination of his employment, the decision of the Board granting benefits is reversed.

### ORDER

AND NOW, this 22nd day of October, 1991, the order of the Unemployment Compensation Board of Review is reversed.

3. While the *Grossman* case involved a return to work after a layoff, the underlying rationale is also applicable to the case before us.