Malcohm Massie,                          :
                    Petitioner           :
                                         :
          v.                             :     No. 902 C.D. 2020
                                         :     Argued: April 12, 2021
Unemployment Compensation Board          :
of Review,                               :
                    Respondent           :

BEFORE:   HONORABLE P. KEVIN BROBSON, President Judge
          HONORABLE MARY HANNAH LEAVITT, Judge (P.)
          HONORABLE ELLEN CEISLER, Judge

OPINION
BY JUDGE LEAVITT                                    FILED: June 1, 2021

Malcohm Massie (Claimant) petitions for review of an adjudication of the Unemployment Compensation Board of Review (Board) that denied his claim for benefits under Section 402(b) of the Unemployment Compensation Law (Law).[1] In doing so, the Board affirmed the Referee's determination that Claimant failed to prove that he had necessitous and compelling cause to quit his employment. On appeal, Claimant argues that the Referee improperly reopened the record without a written request by any party and that the Board abused its discretion in concluding that Claimant quit his employment where the evidence shows that he was fired. Upon review, we reverse.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, which states, in relevant part, that "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature[.]" 43 P.S. §802(b).

**Background**

Claimant worked for Eichelsbergs, Inc. (Employer) as a driller's helper from June 2019 until January 17, 2020. On January 26, 2020, he filed a claim for unemployment compensation benefits. The Unemployment Compensation Service Center (Service Center) concluded that Claimant was ineligible for benefits under Section 402(b) of the Law because he quit his job without a necessitous and compelling reason. Claimant appealed, and the Referee scheduled a hearing for March 19, 2020.

On March 16, 2020, the Referee's office called Claimant and Employer and left a voicemail message that the hearing would be rescheduled. A written notice to that effect was also mailed to the parties. On March 25, 2020, the Referee's office called the parties to "reschedule [the] hearing by telephone." Certified Record at 61 (C.R.___). However, Claimant's phone was "dead," and the call to Employer went to voicemail. *Id.* Later that day, the Referee's office sent an email to both parties requesting an address confirmation so that it could "send the documents." C.R. 62-63. The email also requested that the parties provide the phone number they preferred for the telephonic hearing. Claimant responded; Employer did not.

The telephonic hearing was scheduled for April 6, 2020. Sent with the notice of hearing was a document entitled "Important Information Regarding [the] Law and Regulations," which identified the provisions of the Law and the applicable regulations that had been temporarily suspended under Governor Tom Wolf's Proclamation of Disaster Emergency issued on March 6, 2020. C.R. 69. The Important Information Notice stated as follows:

> Section 505.1 Place of Hearing - was amended to allow hearings to be held at any suitable location.

2

> Regulation 101.128 Schedule of telephone testimony - was amended to allow the Board to schedule testimony by telephone on its own motion.
>
> Regulation 101.130 Notice of testimony by telephone and use of documents - was amended to allow less than 14 days, but at least 3 days, notice of a telephone hearing to the parties. In addition, documents may now be delivered by means other than postal service mail.
>
> Regulation 101.110 Notice of decision of Board - was amended to allow decisions to be delivered by means other than postal service mail.
>
> Regulation 101.83 Notice of filing an Appeal - was amended to allow notice of an appeal to be delivered by means other than by personal delivery or postal service mail.

C.R. 69.

At the April 6, 2020, hearing, only Claimant participated. Receiving no response from Employer's office, the Referee left a voicemail message.

Claimant testified that he lived with his fiancée and her family during his employment by Employer. On January 20, 2020, Claimant had an altercation with his fiancée's family and, as a result, had to leave "for a few days." Notes of Testimony (N.T.), 4/6/2020, at 11. Claimant testified that the altercation left him without a place to live. His family had moved to Florida except for his grandfather, who "live[d] in a little trailer" and did not have space for him. *Id*. Accordingly, Claimant stayed with his grandmother in Florida for six days. He returned to his fiancée's home after they "resolved the issues." *Id*. at 12.

Claimant testified that during his absence from Pennsylvania, he called and repeatedly texted his supervisor, Dan Sponseller, about his situation. Claimant testified that it was his understanding, after speaking with his supervisor, that

3

"Employer did not have a problem with [him] taking a few days off[.]" *Id*. at 10-11. Nevertheless, on January 22 or 23, 2020, Claimant received a termination letter from Employer by email. He contacted Employer's human resources department and was informed that he had been dismissed as a "no-call, no-show[.]" *Id*. at 12. Claimant tried to explain that he had been in contact with Sponseller every day that week, but "they just didn't want to hear it." *Id*.

Claimant's counsel made a closing argument. After that, the Referee stated that "the record is closed. Employer has not appeared. I'll issue a [w]ritten [d]ecision in the next several weeks." *Id*. at 13.

Two hours after the hearing's conclusion, the Referee received a voicemail message from Employer. The transcript of the voicemail states as follows:

> Hi Yes, my name is [Kristie] [Reid]. I work for [Employer] in [M]echanics[burg], PA. I received we are closed. Our offices closed were only open for emergency. No water services. and I received a message from a referee today regarding our employee Malco[h]m Mass[ie]. A [sic] he said there was a meeting, scheduled for 10:15 today and he was calling around 11. Uhm I haven't been in the office for several weeks, so I I don't. I don't know anything about this. Rescheduled hearing if you could call me [] on my personal cell, I'd be happy to talk to you. He said he was gonna go ahead with the [meeting] without us, but we didn't know anything about this so. Could you please call me? Thank you.

C.R. 90.

Later that day, the Referee's office sent a written notice to the parties stating that the April 6, 2020, hearing "has been continued." C.R. 92 (emphasis omitted). Thereafter, a new notice was sent to the parties scheduling the continued hearing for April 30, 2020. It again enclosed the identical Important Information

4

Notice listing the provisions of the Law and regulations that had been suspended by the Governor.

On April 21, 2020, Claimant filed an objection, challenging the "reopening of the record and the scheduling of an additional hearing." C.R. 110. Citing this Court's decision in *County of Allegheny Orphans' Court/Fifth Judicial District v. Unemployment Compensation Board of Review*, 220 A.3d 730 (Pa. Cmwlth. 2019) (*County of Allegheny Orphans' Court*), Claimant argued that the Referee did not have the authority to reopen the record *sua sponte*. Because Claimant did not receive Employer's so-called request to reopen the record, he was not given an opportunity to respond. The Referee overruled Claimant's objection, stating:

> The Referee is aware of your objection to the continuance. The current COVID-19 crisis and the assertions by [E]mployer create a unique circumstance. Your objection is overruled. The hearing will occur as scheduled.

C.R. 117.

At the April 30, 2020, hearing, Claimant restated his objection to the reopening of the record and the conduct of an additional hearing. The Referee again overruled Claimant's objection.

Employer presented the testimony of Kristie Reid, its recruitment manager. She testified that Employer did not receive notice of the hearing of April 6, 2020. She learned about the hearing while checking her work voicemails at home. She then called the Referee's office and left the above-transcribed voicemail message.

Employer also presented the testimony of Claimant's supervisor, Dan Sponseller. He testified that on January 20, 2020, he received a text message from

5

Claimant that he "was kicked out of his home here, had nowhere else to go, and he was moving to Florida." N.T., 4/30/2020, at 11. Claimant told Sponseller that he did not know when he would return to Pennsylvania and was concerned about his previous week's pay. Sponseller testified that he did not terminate Claimant's employment. Rather, he believed Claimant quit "as he was on his way to Florida." *Id*. at 12.

Reid testified that she tried to contact Claimant and left him several voicemail messages "about his final paycheck." *Id*. at 14. Claimant did not answer her calls. On January 23, 2020, she emailed Claimant a "voluntary resignation letter" to sign. *Id*. Claimant emailed back that he did not receive any calls from Reid and that he refused to sign the resignation letter. Claimant's email did not "give any other details about his absence." *Id*. at 15.

**Referee Decision and Board Adjudication**

The Referee issued a decision finding that Claimant voluntarily quit his employment and, thus, was ineligible for unemployment compensation. Based on the evidence offered at the second hearing, the Referee found that Claimant informed Sponseller via text message that he had lost his place to live and was leaving for Florida; Claimant did not state when he would return. The Referee discredited Claimant's testimony to the extent it contradicted this finding of fact. The Referee acknowledged that the email exchange between Claimant and Reid was inconsistent with a voluntary resignation but concluded that it was irrelevant. Claimant had the burden to prove that his separation from employment was involuntary, and he did not meet his burden.

The Referee also concluded that Claimant did not show that he had a necessitous and compelling cause for quitting. Claimant may have experienced an

6

unexpected housing difficulty, but he did not take reasonable steps to preserve his employment. The Referee held that Claimant was ineligible for benefits under Section 402(b) of the Law, 43 P.S. §802(b).

Claimant appealed to the Board. He argued that the Referee erred in reopening the record *sua sponte* after closing the record at the conclusion of the hearing of April 6, 2020. Claimant also argued that the Referee erred in finding that he quit his job when he received a letter from Employer terminating his employment.

The Board affirmed the Referee. The Board held that the Referee did not reopen the record *sua sponte* because Reid's voicemail message mentioned "rescheduling" the hearing. Board Adjudication, 8/19/2020, at 1. Employer presented "good cause" for its failure to receive the hearing notice because its office had been closed due to COVID-19. *Id*. The Board opined that Claimant had an opportunity to object to Employer's request to reopen the record because he did so object both before and at the April 30, 2020, hearing. Thus, it did not matter that Employer did not submit a written request to reopen the record.

Claimant petitioned for this Court's review.

## Appeal

On appeal,[2] Claimant presents five issues for our review, which we combine into two for clarity. First, Claimant argues that the Referee erred in reopening the record without a written request by any party and without proper

---

[2] Our review determines whether the Board's adjudication is in violation of constitutional rights, whether an error of law was committed, or whether the factual findings are supported by substantial evidence. *Nolan v. Unemployment Compensation Board of Review*, 797 A.2d 1042, 1045 n.4 (Pa. Cmwlth. 2002). Substantial evidence is that evidence which "a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Centennial School District v. Department of Education*, 503 A.2d 1090, 1093 n.1 (Pa. Cmwlth. 1986).

cause. Second, Claimant argues that the Board abused its discretion in finding that he voluntarily quit his employment where his testimony and the documentary evidence, *i.e.*, Employer's questionnaire submitted to the Service Center, show that he was fired. Because Employer offered no evidence that Claimant was discharged for willful misconduct, Claimant argues that he is eligible for benefits.

## I. Reopening of the Record

In his first issue, Claimant challenges the Referee's decision to reopen the record. Under the Board's regulation, a request to reopen the record must be presented in writing and must explain why the party had "proper cause" for not appearing at the hearing. *See* 34 Pa. Code §101.24(a). Employer's voicemail transcript was not made available to Claimant until the April 30, 2020, hearing. Even so, the transcribed message does not express a request to reopen the record; Reid merely asked for a return call. Simply, the Referee lacked the authority to reopen the record *sua sponte*, and the Board erred in otherwise holding.

The Board counters that the Referee did not act *sua sponte* because "Employer impliedly requested to reopen the record[.]" Board Brief at 14. Employer's request was not in writing, but the Board argues this was "not dispositive" because Claimant had the opportunity to hear and to respond to Employer's reasons at the April 30, 2020, hearing. Board Brief at 11. The Board contends that Employer established proper cause for its nonappearance at the April 6, 2020, hearing because the hearing took place "in the earliest days of the COVID-19 crisis[,]" and Employer's office had been closed due to the Governor's restrictions. Board Brief at 15.

Due process requires notice and an opportunity to present evidence and legal argument. *Vann v. Unemployment Compensation Board of Review*, 494 A.2d

8

1081, 1084 (Pa. 1985). The Board's regulation allows a hearing to take place in a party's absence if that party has failed to appear after being properly notified of the hearing. The regulation states as follows:

> *If a party notified* of the date, hour and place of a hearing *fails to attend a hearing without proper cause, the hearing may be held* in his absence. In the absence of all parties, the decision may be based upon the pertinent available records. The tribunal may take such other action as may be deemed appropriate.

34 Pa. Code §101.51 (emphasis added). *See also Gadsden v. Unemployment Compensation Board of Review*, 479 A.2d 74, 76 (Pa. Cmwlth. 1984).

Nevertheless, where the referee holds a hearing in the absence of one of the parties, the matter may be reopened. The applicable regulation states, in pertinent part, as follows:

> (a) *If a party who did not attend a scheduled hearing subsequently gives written notice*, which is received by the tribunal prior to the release of a decision, *and it is determined by the tribunal that his failure to attend the hearing was for reasons which constitute "proper cause," the case shall be reopened. Requests for reopening, whether made to the referee or Board, shall be in writing*; shall give the reasons believed to constitute "proper cause" for not appearing; and they shall be delivered or mailed--preferably to the tribunal at the address shown on the notice of hearing or to the Unemployment Compensation Board of Review, Labor and Industry Building, Seventh and Forster Streets, Harrisburg, Pennsylvania 17121, or to the local employment office where the appeal was filed.

34 Pa. Code §101.24(a) (emphasis added). In sum, before a referee can reopen the record, the absent party must file a written request to reopen, identifying the "proper cause" reasons for not appearing at the scheduled time.

9

Here, the transcript of Reid's voicemail message does not include a request to reopen the record. Indeed, the transcript shows that the caller did not know "anything about this [] [r]escheduled hearing" and asked for a call back. C.R. 90. The Referee returned the call, and the substance of that telephonic exchange is not of record.

In *County of Allegheny Orphans' Court*, 220 A.3d 730, the employer appealed the service center's grant of unemployment compensation benefits to the claimant. At the hearing before the referee, a witness subpoenaed by the employer did not appear. The employer did not request a continuance, and the referee closed the record. Two days later, the referee reopened the record. At the second hearing, the subpoenaed witness appeared and testified. Using the evidence from both hearings, the referee concluded that the claimant committed willful misconduct and was ineligible for benefits. The Board reversed, holding that the referee erred and abused her discretion in reopening the record without a written request from a party. Based on the record developed at the first hearing, the Board held that the employer failed to meet its burden of proving willful misconduct.

The employer appealed, and this Court affirmed the Board. We held that the regulation at 34 Pa. Code §101.24(a) does not authorize a referee to reopen the record on her own motion. "Agencies and their agents have only those powers that are conferred on them by the legislature in their enabling statute or authorized regulations." *County of Allegheny Orphans' Court*, 220 A.3d at 736. We further explained that the "authority to reopen the record and further develop the evidence in the interest of justice is not afforded to a referee." *Id.* Rather, that authority has been conferred solely on the Board.

10

Even assuming that Reid's voicemail message constituted an "implicit" request to reopen the record, the request did not satisfy the regulation at 34 Pa. Code §101.24(a). A request to reopen the record "shall be in writing" and must explicitly recite the party's good cause for missing the hearing. *Id.* Reid's message satisfies neither requirement. Notably, 34 Pa. Code §101.24(a) was not suspended by Governor Wolf's Proclamation of Disaster Emergency issued on March 6, 2020.

The Board argues otherwise, relying on *Lamison v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1213 C.D. 2019, filed July 30, 2020) (unreported).[3] In *Lamison*, the referee issued a decision denying the claimant benefits when the claimant did not appear at the hearing. The claimant appealed to the Board and requested a remand hearing under another subsection of the regulation, which states:

> (c) *A request for reopening the hearing which is not received before the decision was mailed*, but is received or postmarked on or before the 15th day after the decision of the referee was mailed to the parties *shall constitute a request for further appeal to the Board and a reopening of the hearing, and the Board will rule upon the request.* If the request for reopening is allowed, the case will be remanded and a new hearing scheduled, with written notice thereof to each of the parties. At a reopened hearing, the opposing party shall be given the opportunity to object to the reopening if he so desires. If the request to have the hearing reopened is denied, the Board will append to the record the request, supporting material and the ruling on the request, so that it shall be subject to review in connection with any further appeal to the Commonwealth Court.

---

[3] *See* Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a) ("Parties may ... cite an unreported panel decision of this Court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

34 Pa. Code §101.24(c) (emphasis added).  The Board denied the claimant's request for a remand hearing, noting that she had failed to offer a "legally sufficient reason to support a finding of proper cause for her nonappearance at the referee's hearing." *Lamison*, slip op. at 4.

On further appeal, this Court vacated the Board's adjudication and remanded the matter.  We explained that although a party is presumed to have received a notice "[w]here [the] notice, mailed to a party's last known address, is not returned by the postal authorities as undeliverable," the claimant should be given an opportunity to present evidence to rebut the presumption of receipt; otherwise, the presumption becomes irrebuttable.  *Lamison*, slip op. at 5-6 (quoting *John Kenneth Ltd. v. Unemployment Compensation Board of Review*, 444 A.2d 824, 826 (Pa. Cmwlth. 1982)).  Further, another regulation at 34 Pa. Code §101.104(c) *requires* the Board to allow a "further appeal" where there is "a material point on which the record below is silent, incomplete, or where [ ] the request for reopening is made under 34 Pa. Code §101.24."[4]  *Lamison*, slip op. at 8 (quoting *Volk v. Unemployment Compensation Board of Review*, 49 A.3d 38, 43 (Pa. Cmwlth.

---

[4] Section 101.104(c) of the Regulation states in relevant part, as follows:

> (c) If the further appeal is allowed by the Board, or if the Board removes an appeal from the referee to the Board and on its own motion assumes jurisdiction of the appeal, notification shall be mailed to the last known post office address of each interested party. . . . *The further appeal shall be allowed and additional evidence required in any of the following circumstances:*
>
>> (1) Whenever the further appeal involves a material point on which the record below is silent or incomplete or appears to be erroneous.
>>
>> (2) It appears that there may have been a denial of a fair hearing under the rules.
>>
>> (3) Under §101.24 (relating to reopening of hearing) a request for reopening received after the decision of the referee was issued which constitutes a request for further appeal to the Board.

34 Pa. Code §101.104(c) (emphasis added).

2012)). We explained that for purposes of 34 Pa. Code §101.24(c), "whether the petitioner had proper cause for not attending the hearing is a material point" on which the existing record was silent. *Lamison*, slip op. at 8 (quoting *Volk*, 49 A.3d at 43). Thus, the Board was required to allow a further appeal.

*Lamison* did not address 34 Pa. Code §101.24(a), and it did not hold that a request to reopen the record does not have to be made in writing. Notably, the claimant in *Lamison* made a written request to the Board for a remand hearing by filing an appeal form. Although the appeal form did not specify the reason for her nonappearance at the hearing, the Board had been previously informed by the claimant's counsel that she did not receive the hearing notice because she had moved. *Lamison*, slip op. at 9.

Here, Employer did not request a reopening of the record but, rather, a return call. Even if Employer's voicemail message could be construed as a motion to reopen the record, the request was not set forth in writing as required by 34 Pa. Code §101.24(a). It was error for the Referee to reopen the record *sua sponte*. *County of Allegheny Orphans' Court*, 220 A.3d at 736. Further, "the referee is not the ultimate fact-finder to whom discretion in developing an adequate record may be implied." *Id*. The Board has this responsibility. The Referee exceeded his authority in reopening the record on his own initiative. We hold that the Board erred in not limiting the record to the evidence admitted during the April 6, 2020, hearing.

## II. Separation from Employment

We consider, next, whether Claimant is eligible for benefits based only on the record developed at the hearing of April 6, 2020. Claimant argues that the record does not support the Board's finding that he voluntarily quit his employment. To the contrary, he had a "conscious intent to remain employed" which was

13

evidenced by his "constant communication" with his supervisor regarding his relocation and plan to return to Pennsylvania "as soon as he was able." Claimant Brief at 18. Claimant testified that he understood from his supervisor's response that "he was cleared to take the time off." *Id*. Further, Employer reported to the Service Center on its questionnaire that Claimant had been "discharged" for "abandoning his position." C.R. 15.

Section 402(b) of the Law provides that a claimant is ineligible for unemployment compensation for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature. 43 P.S. §802(b). "A claimant has the burden of proving that his or her separation from employment was a discharge." *Pennsylvania Liquor Control Board v. Unemployment Compensation Board of Review*, 648 A.2d 124, 126 (Pa. Cmwlth. 1994). "A determination of whether a claimant's separation from employment was a voluntary resignation or a discharge is made by examining the facts surrounding the claimant's termination of employment." *Id*. "Such determination is a question of law to be made based upon the Board's findings." *Id*.

In the case *sub judice*, the record developed at the hearing of April 6, 2020, contained no evidence to support a factual finding that Claimant voluntarily quit his employment. At the April 6, 2020, hearing, Claimant testified that he was "taking a few days off" due to unexpected housing difficulty, but Employer discharged him for being a "no-call, no-show." N.T., 4/6/2020, at 10, 12. This was erroneous, according to Claimant, because he had been in contact with Sponseller, who understood Claimant's situation and did not have a problem with him being absent a few days. *Id*. Likewise, Employer's questionnaire submitted at the hearing stated that Employer "discharged" Claimant on January 22, 2020, for "abandoning

14

his position." C.R. 15.[5] Nothing in the record indicated that Claimant had a "conscious intention to leave his employment," which is the *sine qua non* of a voluntary resignation. *Fekos Enterprises v. Unemployment Compensation Board of Review*, 776 A.2d 1018, 1021 (Pa. Cmwlth. 2001).

Further, because Employer was not present at the hearing of April 6, 2020, it did not present any evidence to show a violation of a work rule, as suggested in its questionnaire. It is the employer's burden to prove willful misconduct under Section 402(e) of the Law.[6] Employer did not present any evidence, let alone prove willful misconduct. Accordingly, the burden never shifted to Claimant to prove good cause.

For these reasons, we conclude that Claimant is eligible for benefits based on the record developed at the hearing of April 6, 2020.

---

[5] Employer's questionnaire contained the following explanation:

> Since [Claimant] texted his supervisor (Dan Sponseller) at 2:33 pm on 1/20/20 that he was on his way to Florida and did not know when he would return, he abandoned his position with the company. He also failed to follow company policy that states failure to receive advance approval for leave would be unexcused and violation of this rule may lead to corrective action including termination. I have included our company policy.

C.R. 16.

[6] Section 402(e) of the Law provides, "[a]n employe shall be ineligible for compensation for any week ... [i]n which his unemployment is due to his discharge . . . from work for willful misconduct connected with his work[.]" 42 P.S. §802(e). "Our Supreme Court defines willful misconduct as behavior that evidences a willful disregard of the employer's interests, a deliberate violation of the employer's work rules, or a disregard of the standards of behavior an employer can rightfully expect from its employees." *Ductmate Industries, Inc. v. Unemployment Compensation Board of Review*, 949 A.2d 338, 341 (Pa. Cmwlth. 2008). The employer bears the initial burden of proving a claimant engaged in willful misconduct. *Frazier v. Unemployment Compensation Board of Review*, 833 A.2d 1181, 1183 (Pa. Cmwlth. 2003). The burden then shifts to the claimant to prove good cause for his conduct. *Kelly v. Unemployment Compensation Board of Review*, 747 A.2d 436, 438-39 (Pa. Cmwlth. 2000).

## Conclusion

We hold that the regulation at 34 Pa. Code §101.24(a) did not authorize the Referee to *sua sponte* reopen the record to hold a second hearing to receive the testimony of Employer's witnesses, who did not appear at the April 6, 2020, hearing. Further, the record developed at the hearing of April 6, 2020, contained no evidence from which the Board could have found that Claimant voluntarily quit his employment. Rather, Claimant testified, consistent with the questionnaire Employer submitted to the Service Center, that he was discharged for a "no-call, no-show," albeit erroneously because he had informed his supervisor that he would be absent for a few days. Because Employer did not participate at the April 6, 2020, hearing, it did not prove that Claimant committed willful misconduct by going to Florida for six days when he lost his housing.

For these reasons, we reverse the Board's August 19, 2020, adjudication and remand for further proceedings before the Referee to calculate the unemployment benefits owed to Claimant.

_____
MARY HANNAH LEAVITT, President Judge Emerita

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Malcohm Massie,                          :
                    Petitioner           :
                                         :
        v.                               :    No. 902 C.D. 2020
                                         :
Unemployment Compensation Board          :
of Review,                               :
                    Respondent           :

**O R D E R**

AND NOW, this 1st day of June, 2021, the adjudication of the Unemployment Compensation Board of Review dated August 19, 2020, in the above-captioned matter is hereby REVERSED. The case is REMANDED to the Board with specific instructions to further REMAND to the Referee to calculate the unemployment compensation benefits owed to Petitioner.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, President Judge Emerita